**SO ORDERED: September 24, 2009.**

**Frank J. Otte**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | |
| VICTOR OOLITIC | ) | Case Nos. 09-05786-FJO-11 |
| STONE COMPANY, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**ORDER (I) SCHEDULING HEARING ON PROPOSED SALE OF SUBSTANTIALLY
ALL OF THE ASSETS OF VICTOR OOLITIC STONE COMPANY AND
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS
AND ENCUMBRANCES AND (II) APPROVING (A) AUCTION AND OVERBID
PROCEDURES IN CONNECTION WITH THE PROPOSED SALE TO OBTAIN
HIGHER AND BETTER OFFERS, (B) AN EXPENSE REIMBURSEMENT,
(C) THE MANNER AND FORM OF NOTICE OF SALE, AND
<u>GRANTING CERTAIN RELATED RELIEF</u>**

Upon the motion (the "Motion")[1] of Victor Oolitic Stone Company ("Victor Oolitic" or

"Company") and Victor Oolitic Holdings, Inc. ("Holdings"), the above-captioned debtors and

---

[1] All capitalized terms not otherwise defined herein shall have the meaning assigned to such terms in the Asset Purchase Agreement, which is attached to the Motion as Exhibit A, or the Motion, as the case may be.

debtors-in-possession (collectively, the "Debtors") for orders: (I) authorizing the sale of substantially all of the assets of the Company and assumption and assignment of executory contracts and unexpired leases to Limestone Acquisition Corp. (the "Proposed Buyer") free and clear of liens, claims, interests and encumbrances, and (II) approving (A) auction and overbid procedures in connection with the proposed sale to obtain higher and better offers, (B) an expense reimbursement, (C) the manner and form of notice of sale, and granting certain related relief; and a hearing to approve the proposed Auction and Overbid Procedures and Expense Reimbursement having been held on September 22, 2009 (the "Sale Procedures Hearing"), and any objections having been resolved, withdrawn or overruled.

NOW, THEREFORE, based upon the Motion and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. §157; and adequate notice of the Motion and opportunity for objection having been given; and it appearing that no other notice need be given; and good cause appearing therefor,

IT IS HEREBY FOUND, CONCLUDED AND DETERMINED THAT:

A.    Notice of the Sale Procedures Hearing, the Motion and the Auction and Overbid Procedures was provided to all necessary parties in interest and is otherwise adequate and appropriate in the circumstances.

B.    The Debtors have concluded that the best method for maximizing the return to the creditors of their estates is, among other things, through a sale of substantially all of the Company's assets (the "Purchased Assets") and the assumption and assignment of certain executory contracts and unexpired leases of the Company (the "Executory Contracts").

C.      In the exercise of its business judgment, the Company has agreed to sell the Purchased Assets to the Proposed Buyer pursuant to an asset purchase and sale agreement (the "Asset Purchase Agreement"), a copy of which is attached to the Motion, subject to higher and better offers.

D.      The Company will maximize the sale price of the Purchased Assets by holding an auction sale thereof (the "Auction") in accordance with the Auction and Overbid Procedures attached hereto as Exhibit A.

E.      The Auction and Overbid Procedures are in the best interests of the Debtors, their estates, creditors and other parties in interest.

F.      The Debtors have demonstrated a compelling and sound business justification for the authorization to pay the Expense Reimbursement under the terms and conditions set forth in the Asset Purchase Agreement.

G.      The Debtors' granting of the Expense Reimbursement to the Proposed Buyer is (i) an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (ii) of substantial benefit to the Debtors' estates, and (iii) fair, reasonable and appropriate in light of, among other things, (a) the size and nature of the proposed sale of the Purchased Assets, (b) the substantial efforts that have been expended by the Proposed Buyer, and (c) the benefits the Proposed Buyer has provided to the Debtors' estates and creditors and all parties-in-interest herein.

H.      All other findings made by the Court during the Sale Procedures Hearing are incorporated herein by reference.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.      The Auction and Overbid Procedures attached hereto as Exhibit A are hereby approved, and the terms of the Auction and Overbid Procedures are incorporated by

reference as if fully set forth herein.  The Debtors are hereby authorized to obtain the highest and

best bids for the Purchased Assets in accordance with the Auction and Overbid Procedures.  The

failure to specifically include or reference any particular provision, section or article of the

Auction and Overbid Procedures in this Order shall not diminish or impair the effectiveness of

such Procedures, it being the intent of this Court that the Auction and Overbid Procedures be

authorized and approved in their entirety.

        2.      The Notice of Sale substantially in the form attached hereto as <u>Exhibit B</u>,

is hereby approved.  The Debtors shall serve, by first-class mail within three (3) business days

after the entry of this Order, a copy of this Order, the Motion and the Notice of Sale on (a) the

United States Trustee; (b) counsel to the agent for the Senior Lenders (the "Senior Agent") and

each of the Senior Lenders; (c) counsel to the agent for the Second Lien Lenders (the "Second

Lien Agent"); (d) all other parties on the Master Service List established in these cases; (e) those

government agencies required to receive notice of proceedings under the Bankruptcy Rules;

(f) all counterparties to the Executory Contracts; (g) all parties who are known to the Debtors to

have liens on the Purchased Assets; (h) all federal, state and local tax and environmental

authorities applicable to the Debtors and their assets and properties; and (i) all parties who have

during these cases contacted the Debtors or their counsel regarding the purchase of the Purchased

Assets and the parties who provided written indications of interest or signed confidentiality

agreements prior to the commencement of the case in the previous sales and marketing process,

and any other parties that the Debtors in consultation with the Senior Agent believe may have

interest in purchasing the Purchased Assets.  Such service is hereby deemed to be sufficient

notice of the sale of the Purchased Assets under the Bankruptcy Code and the Federal Rules of

Bankruptcy Procedure.  A notice of the Sale shall also be published in the Midwest edition of

*The Wall Street Journal* at least once and *The Indianapolis Star* at least twice.

3.      Any person seeking to submit a Competing Offer (as defined in the Auction and Overbid Procedures) for the Purchased Assets shall comply with the Auction and Overbid Procedures and shall submit such Competing Offer to Goulston & Storrs, P.C., 400 Atlantic Avenue, Boston, Massachusetts 02110 (Attn: James F. Wallack, Esq. and Christine D. Lynch, Esq.), and Ice Miller LLP, One American Square, Suite 2900, Indianapolis, Indiana 46204 (Attn: Henry Efroymson, Esq.) with copies to the following: (i)  counsel to the Proposed Buyer, Kirkland & Ellis, 300 North LaSalle, Chicago, Illinois 60654 (Attn: James A. Stempel, Esq.); (ii) counsel to the Administrative Agent, Hopper Blackwell, PC, 111 Monument Circle, #452, Indianapolis, Indiana 46204 (Attn: George W. Hopper, Esq. and Jason R. Burke, Esq.), and (iii) counsel to Freeport Financial, LLC, Winston & Strawn, 35 West Wacker Drive, Chicago, Illinois  60601 (Attn:  Brian I. Swett, Esq.) no later than 5:00 p.m. (EST), on November 13, 2009 (the "Bid Deadline").

4.      If a Qualified Competing Offer (as defined in the Auction and Overbid Procedures) is received in accordance with the terms of this Order and the Auction and Overbid Procedures, the Auction will be conducted on November 17, 2009, at 10:30 a.m. (EST) in Courtroom 329 at the United States Bankruptcy Court for the Southern District of Indiana, 46 East Ohio Street, Indianapolis, Indiana.  The Proposed Buyer is deemed to be a Qualified Bidder, and the Proposed Buyer's bid for the Purchased Assets is deemed a Qualified Bid, as such terms are defined in the Auction and Overbid Procedures.  Notwithstanding the foregoing, the Senior Lenders by the Administrative Agent will be permitted to submit their credit bid as an Alternate Bid.

5.      A hearing to consider approval of the results of the Auction, or, if no Auction is held, the sale of the Purchased Assets to the Proposed Buyer (the "Sale Hearing") will be held in Courtroom 329, United States Bankruptcy Court for the Southern District of Indiana,

46 East Ohio Street, Indianapolis, Indiana 46204 (the "Bankruptcy Court") on November 17,

2009 at10:30 a.m. (EST).  In the event there are no other Qualifying Bids, the Debtors shall

accept the Proposed Buyer's bid pursuant to the Asset Purchase Agreement.

6.      In accordance with section 6.1(c) of the Asset Purchase Agreement, if (i)

the Asset Purchase Agreement has not been terminated by mutual consent pursuant to § 11.1(a)

thereof, (ii) the Proposed Buyer does not purchase the Purchased Assets, (iii) the Proposed Buyer

is not otherwise in default, and (iv) this Court enters an order approving an offer to purchase the

Purchased Assets submitted by a person or entity other than the Proposed Buyer or enters an

order confirming a plan of reorganization of the Debtors (other than a plan under which the

Proposed Buyer acquires the assets of the Company), the Debtors shall pay to the Proposed

Buyer an expense reimbursement of up to $200,000 (the "Expense Reimbursement").  If

applicable, the Debtors shall pay the Expense Reimbursement to the Proposed Buyer upon the

closing of the sale of the Purchased Assets to a third party (or as soon thereafter as practicable)

or the effective date of a plan of reorganization (other than a plan under which the Proposed

Buyer acquires the assets of the Company), as the case may be, and the Expense Reimbursement

will be payable from the proceeds of the sale of the Purchased Assets notwithstanding any liens,

claims, interests or encumbrances thereon.

7.      Except as otherwise provided herein, any objection to the Motion shall be

filed with the Bankruptcy Court and served by overnight delivery upon Goulston & Storrs, P.C.,

400 Atlantic Avenue, Boston, Massachusetts  02110 (Attn: James F. Wallack, Esq. and Christine

D. Lynch, Esq.), and Ice Miller LLP, One American Square, Suite 2900, Indianapolis, Indiana

46204 (Attn: Henry Efroymson, Esq.) with copies to the following: (i) counsel to the Proposed

Buyer, Kirkland & Ellis, 300 North LaSalle, Chicago, Illinois 60654 (Attn: James A. Stempel,

Esq.); (ii) counsel to the Administrative Agent, Hopper Blackwell, PC, 111 Monument Circle,

#452, Indianapolis, Indiana 46204 (Attn: George W. Hopper, Esq. and Jason R. Burke, Esq.), and (iii) counsel to Freeport Financial, LLC, Winston & Strawn, 35 West Wacker Drive, Chicago, Illinois  60601 (Attention:  Brian I. Swett, Esq.) (collectively, the "Interested Parties") so as to be received not later than 5:00 p.m. (EST), on November 13, 2009 (the "Objection Deadline").  An objection shall set forth with particularity the grounds for such objection or other statements of position.

8.      On or before November 6, 2009, the Debtors shall serve a notice (the "Cure Notice") on the counterparties to each Executory Contract, setting forth the cure amount (the "Cure Cost") the Debtors believe is owed under each such Executory Contract.

9.      Any objection to the Cure Notice (including any objection to a Cure Cost or to the assumption and assignment of an Executory Contract, for any reason) shall be filed with the Bankruptcy Court not later than the Objection Deadline and served on the Interested Parties so as to be actually received not later than the Objection Deadline.  An objection shall set forth with particularity the grounds for such objection or other statements of position.  If a counterparty to an Executory Contract fails to object to the Cure Notice in a timely manner and timely serve such objection, such counterparty shall be forever barred from (i) contesting the assumption and assignment of such Executory Contract, and (ii) disputing or otherwise asserting any cure amount other than as set forth in the Cure Notice, and the payment of the Cure Cost set forth in the Cure Notice shall be deemed to satisfy fully and completely the requirements of cure and compensation requisite to the Company's assumption and assignment of such Executory Contract.  A hearing will be held before the Bankruptcy Court on November 17, 2009 at 10:30 a.m. (EST), or at such later date as this Court may designate upon request by the Debtors and with the prior consent of the successful bidder, to consider any and all timely objections to the Cure Notice.

10.     This Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

11.     This Order shall constitute findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

12.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Expense Reimbursement, the Asset Purchase Agreement, the Auction and Overbid Procedures and the implementation of this Order.

# # #

GOULSTON & STORRS, P.C.
James F. Wallack, Esq.
Christine D. Lynch, Esq.
400 Atlantic Avenue
Boston, Massachusetts  02110-3333
Tel:     (617) 482-1776
Fax:     (617) 574-4112
jwallack@goulstonstorrs.com
clynch@goulstonstorrs.com

-and-

Henry A. Efroymson, Esq.
Michelle J. Fisk, Esq.
ICE MILLER, LLP
One American Square, Suite 2900
Indianapolis, IN 46282
Tel:  (317) 236-2100
Fax:  (317) 236-2219
henry.efroymson@icemiller.com
michelle.fisk@icemiller.com

**EXHIBIT A**

**FORM OF AUCTION AND OVERBID PROCEDURES**

## AUCTION AND OVERBID PROCEDURES

On September 16, 2009, Victor Oolitic Stone Company, (the "Company") and Victor Oolitic Holdings, Inc. (collectively, the "Debtors"), filed a motion (the "Motion") for orders: (I) authorizing the sale of substantially all of the Company's assets and assumption and assignment of executory contracts and leases to Limestone Acquisition Corp. (the "Proposed Buyer") free and clear of liens, claims, interests and encumbrances, and (II) approving (A) auction and overbid procedures in connection with the proposed sale to obtain higher and better offers, (B) expense reimbursement, and (C) the manner and form of notice of sale. The Company has agreed to sell substantially all of its assets to the Proposed Buyer pursuant to the terms of a certain asset purchase and sale agreement (the "Asset Purchase Agreement"), subject to Bankruptcy Court approval and subject to higher and better offers. A copy of the Asset Purchase Agreement[1], as well as the Motion, are available upon request to the Debtors' attorneys, Goulston & Storrs, P.C., 400 Atlantic Avenue, Boston, Massachusetts 02110 (Attn: James F. Wallack, Esq. and Christine D. Lynch, Esq.)

The following procedures (the "Bidding Procedures") shall govern the auction process by which the Company will accept and consider higher and better offers for the Assets (as defined in the Asset Purchase Agreement):

1. The Company shall provide within 3 business days of entry of the Sale Procedures Order (a) notice of the Auction (as defined below), the Sale Procedures Order and these Auction and Overbid Procedures, together with a copy of the Asset Purchase Agreement, to those persons who contacted the Company or its counsel with respect to the potential purchase of the Assets during the case or who provided written indications of interest or signed confidentiality agreements during the previous sales and marketing process; and (b) copies of the Asset Purchase Agreement to all other prospective offerors upon written request to the Company or their professionals.

2. In order to pre-qualify ("Pre-Qualification") as a prospective bidder ("Prospective Bidder"), any party desiring to become a Prospective Bidder shall deliver to the Debtors: (i) a signed confidentiality agreement in form and substance satisfactory to the Company, and (ii) evidence establishing to the satisfaction of the Company and the Administrative Agent such Prospective Bidder's financial capability to timely consummate its proposed alternative transaction. The Company shall advise Freeport Financial, LLC ("Freeport") as to the identity of any parties who have signed confidentiality agreements and/or who provided evidence of their financial capability (provided that Freeport has delivered to counsel to the Company a written assurance that it will not be a bidder or have an interest in any bidder).

3. Following Pre-Qualification, the Company shall provide such Prospective Bidder with access to information concerning the assets and liabilities, projected cash flow and future

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Asset Purchase Agreement.

prospects of the Company (including an offering memorandum prepared by the Company of such scope as to Company-specific information as was contained in the offering memorandum used by the Company in connection with its third quarter 2008 marketing efforts) reasonably requested by a Prospective Bidder for the sole purpose of submitting a counteroffer for the Assets (a "Competing Offer").

4.      Any party that submits a Competing Offer in compliance with the relevant provisions of paragraph 5 below shall be designated as a "Qualified Bidder." The Proposed Buyer shall be deemed to be a Qualified Bidder.

5.      To be considered, each Competing Offer shall:

(a) be submitted in writing by no later than 5:00 p.m. (EST) on November 13, 2009 (the "Bid Deadline") to Goulston & Storrs, P.C., 400 Atlantic Avenue, Boston, Massachusetts 02110 (Attn: James F. Wallack, Esq. and Christine D. Lynch, Esq.), and Ice Miller LLP, One American Square, Suite 2900, Indianapolis, Indiana 46204 (Attn: Henry Efroymson, Esq.) with copies to the following: (i) counsel to the Proposed Buyer, Kirkland & Ellis, 300 North LaSalle, Chicago, Illinois 60654 (Attn: James A. Stempel, Esq.); (ii) counsel to the Administrative Agent, Hopper Blackwell, PC, 111 Monument Circle, #452, Indianapolis, Indiana 46204 (Attn: George W. Hopper, Esq. and Jason R. Burke, Esq.), and (iii) counsel to Freeport Financial, LLC, Winston & Strawn, 35 W. Wacker Drive, Chicago, Illinois 60601 (Attention: Brian I. Swett, Esq.).

(b) at a minimum, exceed the sum of (i) the Purchase Price, plus (ii) $450,000, for a total minimum bid of $53,980,069.74 plus any interest accruing at the non-default rate and owing to the Senior Lender subsequent to the Petition Date (less any adequate protection payments received) (the "Minimum Overbid Amount");

(c) be accompanied by a signed asset purchase agreement in the form of the Asset Purchase Agreement, together with a marked copy showing all changes to the Asset Purchase Agreement, which changes shall not be less favorable to the Company, its creditors and employees in any material respect including, without limitation, with respect to Assumed Liabilities to the extent unpaid prior to the Closing Date;

(d) not be subject to, or conditioned on, any contingency or condition, including without limitation, the outcome of unperformed due diligence by the bidder or upon any financing contingency;

(e) be irrevocable until the earlier to occur of (i) the Closing, or (ii) for thirty (30) days following the conclusion of the Auction;

(f) be submitted with a cash deposit equal to $100,000 (the "Deposit") in the form of a wire transfer or a certified check made payable to the Company and sent to the Company's counsel, which Deposit shall be non-refundable if the Bankruptcy Court approves the sale of the Company's assets to such Qualified Bidder;

(g) be substantially on the same or better terms and conditions as set forth in the Asset Purchase Agreement;

(h) be submitted with evidence establishing to the satisfaction of the Company and the Senior Lenders, in consultation with their professionals, that such Prospective Bidder has the financial capability to timely consummate its Competing Offer and can provide all non-debtor parties to those executory contracts and unexpired leases to be assumed and assigned with adequate assurance of future performance as contemplated by Section 365 of the Bankruptcy Code (and copies of such evidence of financial capability will be provided to Freeport's counsel, provided that Freeport confirms that it is not a bidder and shall have no interest in any bidder); and

(i) Notwithstanding the foregoing, the Senior Lenders will be permitted to submit their credit bid which will be deemed to be a Qualified Bid. Any such credit bid by the Senior Lenders will be an Alternate Bid and will be accepted if the Proposed Buyer fails to close timely on the Asset Purchase Agreement and there is no Qualified Bidder other than the Proposed Buyer and the Senior Lenders.

6.    If the Company does not receive any Competing Offers that satisfy the provisions set forth in paragraph 5 above, the Company will report the same to the Bankruptcy Court, and the Company shall proceed to seek court approval of the Asset Purchase Agreement with Proposed Buyer.

7.    Competing Offers that the Company, in consultation with the Senior Agent, determines satisfy the provisions set forth in paragraph 5 above shall be deemed to be "Qualified Bids."

8.    In the event that one or more Qualified Bids are received, an auction (the "Auction") will be conducted in Courtroom 329 at the United States Bankruptcy Court for the Southern District of Indiana, 46 East Ohio Street, Indianapolis, Indiana on November 17, 2009, beginning at 10:30 a.m. (EST) or such later time or other place as the Company shall notify all Qualified Bidders that have submitted Qualified Bids. Only the Proposed Buyer, Qualified Bidders and the Senior Lenders will be entitled to participate in and make any subsequent bids at the Auction. Bidding at the Auction will continue until such time as the highest and best offer is determined. The Company may announce at the Auction additional rules or procedures for conducting the Auction so long as such rules are not inconsistent with these Auction Procedures. At the Auction, bidding will commence at the amount of the Opening Bid, and each subsequent bid shall be in increments of no less than $100,000. The Senior Lenders shall be permitted to submit credit bids at the Auction without deposit or Pre-Qualification requirements.

9.    All bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes relating to the Auction and the sale of the Assets.

10.  The Company reserves the right, after consultation with its professionals, the Senior Agent and Freeport (assuming Freeport is not a bidder and has no interest in a bidder), to (i) determine, at its discretion, which bid, if any, is the highest and best offer, taking into consideration, inter alia, that the Expense Reimbursement would be payable if a party other than the Proposed Buyer is the Successful Bidder, (ii) reject any bid that the Company deems to be inadequate, insufficient or otherwise unsatisfactory, (iii) change the location of the Auction, and/or (iv) adjourn the Auction by announcing such adjournment at the Auction.  Notwithstanding the foregoing, the Company and the Senior Lenders shall not reject the bid of the Proposed Buyer under the Asset Purchase Agreement unless a higher and better bid is received from a Qualified Bidder pursuant to these procedures, and the Auction shall not be adjourned beyond a date that would put the Company in default of the Asset Purchase Agreement without the consent of the Proposed Buyer.

11.  If, for any reason, the entity that makes the highest and best bid (such entity, the "Successful Bidder") fails to close on the purchase of the Company's assets, then: (i) the Successful Bidder shall forfeit the Deposit and be subject to such other rights and remedies as the Company may have for such failure (ii) the Qualified Bidder who, as of the conclusion of the Auction, has made the second and the next highest and best bid automatically will be deemed to have submitted the highest and best bid without further order of the Bankruptcy Court (such bidder, the "Alternate Bidder"); and (iii) the Alternate Bidder will be required to proceed as the purchaser at closing and its bid will be treated as the Successful Bid without further order of the Bankruptcy Court. Notwithstanding the foregoing, the Proposed Buyer shall in no event be required to serve as the Alternate Bidder.

12.  No party other than the Proposed Buyer may seek an expense reimbursement, break-up fee or similar fee.

GSDOCS\1935956.6

4

**EXHIBIT B**

**FORM OF NOTICE OF SALE**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | |
| VICTOR OOLITIC | ) | Case Nos. 09-05786-FJO-11 |
| STONE COMPANY, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

### NOTICE OF SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF VICTOR OOLITIC STONE COMPANY AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS <u>AND UNEXPIRED LEASES</u>

TO CREDITORS AND PARTIES IN INTEREST:

PLEASE TAKE NOTICE, that, pursuant to 11 U.S.C. §§ 363 and 365 and Rules 2002, 4001, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, Victor Oolitic Stone Company (the "Company") intends to sell substantially all of its assets and assume and assign certain executory contracts and leases as further described in this notice.

The Company has entered into an Asset Purchase Agreement ("Asset Purchase Agreement") with Limestone Acquisition Corp. (the "Proposed Buyer"), under which the Proposed Buyer intends to purchase the Purchased Assets (as defined in the Asset Purchase Agreement).  On September 16, 2009, the Debtors filed their Motion (the "Motion")[1] For Orders: (I) Authorizing The Sale Of Substantially All Of The Assets Of Victor Oolitic Stone Company And The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases To Limestone Acquisition Corp. Free And Clear Of Liens, Claims, Interests And Encumbrances, And (II) Approving (A) Auction And Overbid Procedures In Connection With The Proposed Sale To Obtain Higher And Better Offers, (B) An Expense Reimbursement, And (C) The Manner And Form Of Notice Of Sale.  Pursuant to the Motion, the Company is seeking authority to sell the Purchased Assets to the Proposed Buyer or a higher and better bidder, and authority to assume and assign certain executory contract and unexpired leases.

The Debtors are soliciting higher and better offers by means of an auction (discussed below), which shall be governed by the terms of the Auction and Overbid Procedures attached as <u>Exhibit A</u> to this notice (the "Auction and Overbid Procedures"). The Auction and Overbid Procedures have been approved by the United States

---

[1] All capitalized terms not otherwise defined herein shall have the meaning assigned to such terms in the Motion, the Asset Purchase Agreement, which is attached to the Motion as Exhibit A, or the Auction and Overbid Procedures, as the case may be.

Bankruptcy Court for the Southern District of Indiana (the "Bankruptcy Court") by order dated September ___, 2009.

The Motion and the Asset Purchase Agreement are on file with the Bankruptcy Court, 46 East Ohio Street, Indianapolis, Indiana 46204, and are available for review on business days during regular business hours at the Clerk's office or at the Bankruptcy Court's website, www.insb.uscourts.gov (a password and payment of a fee is required for viewing pleadings online).  In addition, copies of the Motion and the Asset Purchase Agreement are available upon request from the undersigned.

OBJECTIONS, if any, to the relief requested in the Motion or to final approval of the Asset Purchase Agreement must be filed with the Bankruptcy Court and served by overnight delivery upon Goulston & Storrs, P.C., 400 Atlantic Avenue, Boston, Massachusetts  02110 (Attn: James F. Wallack, Esq. and Christine D. Lynch, Esq.), and Ice Miller LLP, One American Square, Suite 2900, Indianapolis, Indiana 46204 (Attn: Henry Efroymson, Esq.) with copies to the following: (i)  counsel to the Proposed Buyer, Kirkland & Ellis, 300 North LaSalle, Chicago, Illinois 60654 (Attn: James A. Stempel, Esq.); (ii) counsel to the Senior Agent, Hopper Blackwell, PC, 111 Monument Circle, #452, Indianapolis, Indiana 46204 (Attn: George W. Hopper, Esq. and Jason Burke, Esq.); (iii) counsel to Freeport Financial, LLC, Winston & Strawn, 35 West Wacker Drive, Chicago, Illinois  60601 (Attention:  Brian I. Swett, Esq.), and (iv) Laura A. Duvall, Office of the United States Trustee, 101 West Ohio Street, Suite 1000, Indianapolis, Indiana 46204 (collectively, the "Interested Parties") so as to be received not later than 5:00 p.m. (EST), on November 13, 2009 (the "Objection Deadline").  An objection shall set forth with particularity the grounds for such objection or other statements of position.

On or before November 6, 2009, the Debtors shall serve a notice (the "Cure Notice"), setting forth the cure amount (the "Cure Amount") the Debtors believe is owed under each executory contract or unexpired lease to be assumed and assigned by the Company (collectively, the "Executory Contracts") on the non-debtor parties to each such contract or lease.

Any Objection to the Cure Notice (including any objection to a Cure Amount or to the assumption and assignment of leases or contracts for any reason) shall be filed with the Bankruptcy Court as specified above and served on the Interested Parties so as to be actually received not later than the Objection Deadline.  An objection shall set forth with particularity the grounds for such objection or other statements of position.  If a non-debtor party to an Executory Contract fails to object to the Cure Notice in a timely manner and timely serve such objection, such non-debtor party shall be forever barred from (i) contesting the assumption and assignment of such Executory Contract, and (ii) disputing or otherwise asserting any cure amount other than as set forth in the Cure Notice and payment of the amount set forth in the Cure Notice shall be deemed to satisfy fully and completely the requirements of cure and compensation requisite to the Company's assumption and assignment of such Executory Contract.  A hearing will be held before the Bankruptcy Court on November 17, 2009, at 10:30 a.m. (EST), or at a

later date to be determined by the Court, to consider any and all objections to the Cure Notice.

Through this notice, HIGHER AND BETTER OFFERS TO PURCHASE THE ASSETS ARE HEREBY SOLICITED subject to the terms and conditions of the Auction and Overbid Procedures.  To be considered a Qualified Bid, an offer must comply with the Auction and Overbid Procedures and be served upon the Interested Parties so as to be received on or before 5:00 p.m. (EST) on November 13, 2009.  If a Qualified Bid is timely received, the Debtors will hold an auction at Courtroom 329, United States Bankruptcy Court for the Southern District of Indiana, 46 East Ohio Street, Indianapolis, Indiana, on November 17, 2009, beginning at 10:30 a.m. (EST) or such later time or other place as the Company shall notify all Qualified Bidders who have submitted Qualified Bids.

A HEARING on the Motion seeking approval of the sale of the Purchased Assets is scheduled to take place at 10:30 a.m. (EST) on November 17, 2009 at the Bankruptcy Court, located at 46 East Ohio Street, Indianapolis, Indiana 46204, Courtroom 329, before the Honorable Frank J. Otte, United States Bankruptcy Judge.  If no objection to the sale is timely filed, the Bankruptcy Court may cancel the scheduled hearing and may grant the Motion.

Dated: September ____, 2009               Respectfully submitted by:


_____
Henry A. Efroymson, Esq.
Michelle J. Fisk, Esq.
ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, Indiana 46282-0200
Tel:    (317) 236-2100
Fax:    (317) 236-2219

- and -

James F. Wallack, Esq.
Christine D. Lynch, Esq.
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, Massachusetts  02110-3333
Tel:    (617) 482-1776
Fax:    (617) 574-4112

*Counsel to Victor Oolitic Stone Company
and Victor Oolitic Holdings, Inc.*

## EXHIBIT A

## AUCTION AND OVERBID PROCEDURES

On September 16, 2009, Victor Oolitic Stone Company, (the "Company") and Victor Oolitic Holdings, Inc. (collectively, the "Debtors"), filed a motion (the "Motion") for orders: (I) authorizing the sale of substantially all of the Company's assets and assumption and assignment of executory contracts and leases to Limestone Acquisition Corp. (the "Proposed Buyer") free and clear of liens, claims, interests and encumbrances, and (II) approving (A) auction and overbid procedures in connection with the proposed sale to obtain higher and better offers, (B) expense reimbursement, and (C) the manner and form of notice of sale. The Company has agreed to sell substantially all of its assets to the Proposed Buyer pursuant to the terms of a certain asset purchase and sale agreement (the "Asset Purchase Agreement"), subject to Bankruptcy Court approval and subject to higher and better offers. A copy of the Asset Purchase Agreement[1], as well as the Motion, are available upon request to the Debtors' attorneys, Goulston & Storrs, P.C., 400 Atlantic Avenue, Boston, Massachusetts 02110 (Attn: James F. Wallack, Esq. and Christine D. Lynch, Esq.)

The following procedures (the "Bidding Procedures") shall govern the auction process by which the Company will accept and consider higher and better offers for the Assets (as defined in the Asset Purchase Agreement):

1.  The Company shall provide within 3 business days of entry of the Sale Procedures Order (a) notice of the Auction (as defined below), the Sale Procedures Order and these Auction and Overbid Procedures, together with a copy of the Asset Purchase Agreement, to those persons who contacted the Company or its counsel with respect to the potential purchase of the Assets during the case or who provided written indications of interest or signed confidentiality agreements during the previous sales and marketing process; and (b) copies of the Asset Purchase Agreement to all other prospective offerors upon written request to the Company or their professionals.

2.  In order to pre-qualify ("Pre-Qualification") as a prospective bidder ("Prospective Bidder"), any party desiring to become a Prospective Bidder shall deliver to the Debtors: (i) a signed confidentiality agreement in form and substance satisfactory to the Company, and (ii) evidence establishing to the satisfaction of the Company and the Administrative Agent such Prospective Bidder's financial capability to timely consummate its proposed alternative transaction. The Company shall advise Freeport Financial, LLC ("Freeport") as to the identity of any parties who have signed confidentiality agreements and/or who provided evidence of their financial capability (provided that Freeport has delivered to counsel to the Company a written assurance that it will not be a bidder or have an interest in any bidder).

3.  Following Pre-Qualification, the Company shall provide such Prospective Bidder with access to information concerning the assets and liabilities, projected cash flow and future

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Asset Purchase Agreement.

prospects of the Company (including an offering memorandum prepared by the Company of such scope as to Company-specific information as was contained in the offering memorandum used by the Company in connection with its third quarter 2008 marketing efforts) reasonably requested by a Prospective Bidder for the sole purpose of submitting a counteroffer for the Assets (a "Competing Offer").

4.     Any party that submits a Competing Offer in compliance with the relevant provisions of paragraph 5 below shall be designated as a "Qualified Bidder."  The Proposed Buyer shall be deemed to be a Qualified Bidder.

5.     To be considered, each Competing Offer shall:

(a) be submitted in writing by no later than 5:00 p.m. (EST) on November 13, 2009 (the "Bid Deadline") to Goulston & Storrs, P.C., 400 Atlantic Avenue, Boston, Massachusetts  02110 (Attn: James F. Wallack, Esq. and Christine D. Lynch, Esq.), and Ice Miller LLP, One American Square, Suite 2900, Indianapolis, Indiana 46204 (Attn: Henry Efroymson, Esq.) with copies to the following: (i)  counsel to the Proposed Buyer, Kirkland & Ellis, 300 North LaSalle, Chicago, Illinois 60654 (Attn: James A. Stempel, Esq.); (ii) counsel to the Administrative Agent, Hopper Blackwell, PC, 111 Monument Circle, #452, Indianapolis, Indiana 46204 (Attn: George W. Hopper, Esq. and Jason R. Burke, Esq.), and (iii) counsel to Freeport Financial, LLC, Winston & Strawn, 35 W. Wacker Drive, Chicago, Illinois  60601 (Attention:  Brian I. Swett, Esq.).

(b) at a minimum, exceed the sum of (i) the Purchase Price, plus (ii) $450,000, for a total minimum bid of $53,980,069.74 plus any interest accruing at the non-default rate and owing to the Senior Lender subsequent to the Petition Date (less any adequate protection payments received) (the "Minimum Overbid Amount");

(c) be accompanied by a signed asset purchase agreement in the form of the Asset Purchase Agreement, together with a marked copy showing all changes to the Asset Purchase Agreement, which changes shall not be less favorable to the Company, its creditors and employees in any material respect including, without limitation, with respect to Assumed Liabilities to the extent unpaid prior to the Closing Date;

(d) not be subject to, or conditioned on, any contingency or condition, including without limitation, the outcome of unperformed due diligence by the bidder or upon any financing contingency;

(e) be irrevocable until the earlier to occur of (i) the Closing, or (ii) for thirty (30) days following the conclusion of the Auction;

(f) be submitted with a cash deposit equal to $100,000 (the "Deposit") in the form of a wire transfer or a certified check made payable to the Company and sent to the Company's counsel, which Deposit shall be non-refundable if the Bankruptcy Court approves the sale of the Company's assets to such Qualified Bidder;

(g) be substantially on the same or better terms and conditions as set forth in the Asset Purchase Agreement;

(h) be submitted with evidence establishing to the satisfaction of the Company and the Senior Lenders, in consultation with their professionals, that such Prospective Bidder has the financial capability to timely consummate its Competing Offer and can provide all non-debtor parties to those executory contracts and unexpired leases to be assumed and assigned with adequate assurance of future performance as contemplated by Section 365 of the Bankruptcy Code (and copies of such evidence of financial capability will be provided to Freeport's counsel, provided that Freeport confirms that it is not a bidder and shall have no interest in any bidder); and

(i) Notwithstanding the foregoing, the Senior Lenders will be permitted to submit their credit bid which will be deemed to be a Qualified Bid. Any such credit bid by the Senior Lenders will be an Alternate Bid and will be accepted if the Proposed Buyer fails to close timely on the Asset Purchase Agreement and there is no Qualified Bidder other than the Proposed Buyer and the Senior Lenders.

6.    If the Company does not receive any Competing Offers that satisfy the provisions set forth in paragraph 5 above, the Company will report the same to the Bankruptcy Court, and the Company shall proceed to seek court approval of the Asset Purchase Agreement with Proposed Buyer.

7.    Competing Offers that the Company, in consultation with the Senior Agent, determines satisfy the provisions set forth in paragraph 5 above shall be deemed to be "Qualified Bids."

8.    In the event that one or more Qualified Bids are received, an auction (the "Auction") will be conducted in Courtroom 329 at the United States Bankruptcy Court for the Southern District of Indiana, 46 East Ohio Street, Indianapolis, Indiana on November 17, 2009, beginning at 10:30 a.m. (EST) or such later time or other place as the Company shall notify all Qualified Bidders that have submitted Qualified Bids. Only the Proposed Buyer, Qualified Bidders and the Senior Lenders will be entitled to participate in and make any subsequent bids at the Auction. Bidding at the Auction will continue until such time as the highest and best offer is determined. The Company may announce at the Auction additional rules or procedures for conducting the Auction so long as such rules are not inconsistent with these Auction Procedures. At the Auction, bidding will commence at the amount of the Opening Bid, and each subsequent bid shall be in increments of no less than $100,000. The Senior Lenders shall be permitted to submit credit bids at the Auction without deposit or Pre-Qualification requirements.

9.    All bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes relating to the Auction and the sale of the Assets.

10.    The Company reserves the right, after consultation with its professionals, the Senior Agent and Freeport (assuming Freeport is not a bidder and has no interest in a bidder), to (i) determine, at its discretion, which bid, if any, is the highest and best offer, taking into consideration, inter alia, that the Expense Reimbursement would be payable if a party other than the Proposed Buyer is the Successful Bidder, (ii) reject any bid that the Company deems to be inadequate, insufficient or otherwise unsatisfactory, (iii) change the location of the Auction, and/or (iv) adjourn the Auction by announcing such adjournment at the Auction.  Notwithstanding the foregoing, the Company and the Senior Lenders shall not reject the bid of the Proposed Buyer under the Asset Purchase Agreement unless a higher and better bid is received from a Qualified Bidder pursuant to these procedures, and the Auction shall not be adjourned beyond a date that would put the Company in default of the Asset Purchase Agreement without the consent of the Proposed Buyer.

11.    If, for any reason, the entity that makes the highest and best bid (such entity, the "Successful Bidder") fails to close on the purchase of the Company's assets, then: (i) the Successful Bidder shall forfeit the Deposit and be subject to such other rights and remedies as the Company may have for such failure (ii) the Qualified Bidder who, as of the conclusion of the Auction, has made the second and the next highest and best bid automatically will be deemed to have submitted the highest and best bid without further order of the Bankruptcy Court (such bidder, the "Alternate Bidder"); and (iii) the Alternate Bidder will be required to proceed as the purchaser at closing and its bid will be treated as the Successful Bid without further order of the Bankruptcy Court. Notwithstanding the foregoing, the Proposed Buyer shall in no event be required to serve as the Alternate Bidder.

12.    No party other than the Proposed Buyer may seek an expense reimbursement, break-up fee or similar fee.

GSDOCS\1935956.6